**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**WILLIAM MUNCH,**

      **Plaintiff,**

**v.**                                   **Case No.: 8:13-CV-1179-T-17EAJ**

**CREDIT PROTECTION ASSOCIATION, LP,**
**et al,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Before the Court are Plaintiff William Munch's ("Plaintiff's") **Motion for Award of Costs and Attorney's Fees** (Dkt. 28), Defendant Credit Protection Association, LP's **Objection to Plaintiff's Motion for Award of Costs and Attorney's Fees** (Dkt. 33), and Plaintiff's **Reply to Credit Protection Association, LP's Objection to Plaintiff's Motion for Award of Costs and Attorney Fees** (Dkt. 43).[1]

On May 2, 2013, Plaintiff filed a complaint alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559, et seq., against Credit Protection Association, LP ("CPA") and Comcast of Tallahassee, LLC a/k/a Comcast-09587 ("Comcast"). (Dkt. 1; Dkt. 27)[2]  In January 2013, Plaintiff, a customer of Comcast, received a letter from CPA about an alleged unpaid bill. (Dkt. 27 ¶¶ 9-10)  Plaintiff promptly mailed a check for payment to Comcast. (Id. ¶ 11)  Soon

---

[1]  The District Judge referred this motion to the undersigned. (Dkt. 35)  The undersigned issues this report and recommendation pursuant to Fed. R. Civ. P. 54(d)(2)(D) and 72(b).

[2]  Plaintiff's initial complaint (Dkt. 1) was missing a page; a complete version was filed on December 6, 2013 (Dkt. 27).

thereafter, CPA contacted Plaintiff about the bill and took a debit card payment over the telephone, informing Plaintiff that his mailed check would be marked void when received and returned to him. (Id. ¶¶ 15-16)   However, Plaintiff's check was processed along with the telephone payment, resulting in overdraft charges of $72.00 assessed to Plaintiff and his paying twice the amount owed to Comcast. (Id. ¶¶ 17-18)   After being informed of its error, CPA sent Plaintiff two additional notices of past due balance. (Id. ¶¶ 21-22)   Plaintiff requests statutory damages of $2,000.00 against each defendant, actual damages against each defendant, and reasonable attorney's fees and costs. (Id. at 11)

CPA filed an answer and affirmative defenses on July 11, 2013. (Dkt. 16)   Settlement discussions began on June 26, 2013. (Dkt. 33 Ex. 1 at 6-7)   On November 25, 2013, Plaintiff filed a notice of settlement as to CPA but the notice states that the "court shall retain jurisdiction to enforce the settlement and determine the amount of attorney fees and costs to plaintiff."[3] (Dkt. 25 at 1)

In his motion, Plaintiff seeks $22,120.00 in attorney's fees, $1,254.00 in paralegal's fees, and $520.00 in costs. (Dkt. 28 at 8; Dkt. 28 Ex. 1)   In his reply, Plaintiff adjusted the amount of fees sought to $16,345.00 in attorney's fees, $1,254.00 in paralegal's fees, and $400.00 in costs. (Dkt. 43)

## I.   Attorney's Fees

### A.   Legal Framework

Title 15 U.S.C. § 1692k(a) of the FDCPA provides:

[A]ny debt collector who fails to comply with any provision of this subchapter with

---

[3] Plaintiff's claims against Defendant Comcast have not been settled.

respect to any person is liable to such person in an amount equal to the sum of . . . (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a)(3).  The award of attorney's fees to a prevailing party is mandatory under the FDCPA. Valencia v. Affiliated Group, Inc., 674 F. Supp. 2d 1300, 1303-04 (S.D. Fla. 2009) (citation omitted).

In evaluating a plaintiff's request for attorney's fees, the court must calculate the lodestar, which is the number of reasonable hours spent working on the case multiplied by a reasonable hourly rate. Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam) (citation omitted). The court must also determine whether an adjustment to the lodestar is necessary based on the results obtained. ACLU of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999) (citation omitted).  The fee applicant bears the burden of establishing entitlement to an award and documenting appropriate hours and hourly rates. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

"Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting Hensley, 461 U.S. at 436).  Further, the court itself is "an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988) (citations omitted).

Initially, Plaintiff sought fees for work by attorney Frederick Vollrath ("Vollrath") and a paralegal as follows:

3

| Name | Hours | Hourly Rate | Fees |
|------|-------|-------------|------|
| Vollrath | 63.2 | $350.00 | $22,120.00 |
| Paralegal | 13.2 | $95.00 | $1,254.00 |
| **Total:** | **76.4** | | **$23,374.00** |

(Dkt. 28 Ex. 1).  In his reply, Plaintiff proposes an amended amount of time of 46.7 hours billed for attorney's fees for a total fee of $16,345.00 for Vollrath.[4] (Dkt. 43 at 4-6)  Plaintiff still seeks the 13.2 hours for paralegal fees. (Id. at 6)

CPA does not contest Plaintiff's status as the prevailing party or that Plaintiff is entitled to reasonable attorneys' fees and costs.  However, CPA objects to Plaintiff's fee petition as unreasonable given the procedural history of the case and the amount of time expended by Vollrath.

### 1. Reasonable Hourly Rate

An attorney's reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299 (citations omitted).  The party seeking attorney's fees bears the burden of producing "satisfactory evidence that the requested rate is in line with prevailing market rates," which normally requires more than just an affidavit from the attorney performing the work. Id.  The court may consider direct evidence of rates for similar services or opinion evidence about rates as well as its own expertise and judgment. Id.  The court may also consider the twelve factors derived from the American Bar Association's Code of Professional Conduct and adopted in

---

[4] Plaintiff proposes 30 hours for email communication and 16.7 hours for non-email work. (Dkt. 43)

<u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974).[5]  <u>See</u> <u>Hensley</u>,

461 U.S. at 430.

In support of the requested hourly rates, Plaintiff states:

The below-signed attorney charges fees at the rate of $350 per hour for litigation similar to this action, and that hourly rate is in line with the prevailing market rates for such litigation in the Tampa Bay area by attorneys with similar skills in litigating in both state and federal courts., experience in excess of forty (40) years of continuously practicing trial law and more recently consumer protection law in the Tampa Bay area, as well as reputations and abilities, as shown by the Unsworn Declaration as to Attorney's Fees attached as Exhibit "B".

(Dkt. 28 at 2)  An Exhibit "B" was not filed with the motion, but CPA does not contest the

reasonableness of the hourly rate claimed.  Accordingly, the Court recommends a reasonable hourly

rate for Vollrath is $350.00 per hour.[6]  Regarding the prevailing rate for paralegal work, the Court

finds that the claimed rate of $95.00 per hour is reasonable.  <u>See</u> <u>Selby</u>, 2010 WL 745748, at *5

(reducing paralegal hourly rate from $125.00 to $95.00).

---

[5] The <u>Johnson</u> factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the degree of skill necessary to serve the client properly; (4) the attorney's inability to accept other employment because he accepted the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount of damages involved and the relief or results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases.  <u>Johnson</u>, 488 F.2d at 717-19.

[6] In some cases, however, Vollrath has received a rate of $300.00 per hour. <u>See</u> <u>e.g.</u> <u>Hepsen v. J.C. Christensen and Assocs., Inc.</u>, 394 F. App'x 597, 600 (11th Cir. 2010) (per curiam) (unpublished) ("The magistrate judge did not abuse her discretion in setting the reasonable hourly rate at $300."); <u>Winkler v. Cach, LLC</u>, No. 8:11-CV-2358-T-24AEP, 2012 WL 2568135, at *1 (M.D. Fla. July 2, 2012) ("Upon review, the Court finds that based on its own expertise and judgment, Plaintiff's counsel's hourly rate must be reduced to $300 per hour in order to reflect the prevailing market rate in the relevant legal community . . . .").

2.    **Hours Reasonably Expended**

Plaintiff asserts it took Vollrath and a paralegal 76.4 hours to prosecute this relatively simple

FDCPA case that was never tried and had limited motion practice.[7]  CPA submits that a reduction

in the number of hours billed by Plaintiff's counsel is appropriate because Plaintiff's counsel's time

is unreasonable and CPA made reasonable offers to settle the attorney's fees under the

circumstances.

Vollrath entered an appearance in this case of May 2, 2013.  A notice of settlement between

Plaintiff and CPA was filed on November 27, 2013; on December 20, 2013, the fees application was

filed on behalf of Plaintiff.

In its response, CPA specifically objects to excessive time billed for: (a) drafting of the

witness and exhibit list, Rule 26 disclosures, and affidavits; (b) drafting/reviewing discovery; (c)

claims solely against Comcast; (d) fee petition; (e) communication with individuals, and (f) vague

entries. (Dkt. 33 at 7-8)

Plaintiff's reply proposes a reduction to 46.2 hours in attorney's fees as follows: (a) 30 hours

for email communications; (b) 16.7 hours for work not reflected in emails.[8] (Dkt. 43 at 4-6)  Even

with this proposed reduction, the fees sought by Plaintiff are unreasonable and excessive and should

be adjusted accordingly.

---

[7] This amount entails all hours expended as to CPA and Comcast.  As Comcast remains a
party to the suit, Plaintiff's reply adjusted the hours to reflect only the activity spent litigating the
claims against CPA. (Dkt. 43 at 4-6)

[8] In calculating the hours Plaintiff lists for non-email work, the Court counts 17.2 hours.
However, these items will be reviewed line by line, <u>infra</u>.

### (a)    Excessive/Duplicative Hours

A determination of the hours reasonably expended by counsel should exclude those hours which are "'excessive, redundant or otherwise unnecessary.'" <u>Norman</u>, 836 F.2d at 1301 (quoting <u>Hensley</u>, 461 U.S. at 434). In a petition for attorney's fees, the applicant must exercise "billing judgment", <u>Hensley</u>, 461 U.S. at 437, which "mean[s] that the hours excluded are those that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation, or experience of counsel*." <u>Norman</u>, 836 F.2d at 1301 (emphasis in original). Where a fee applicant does not exercise proper billing judgment, as Plaintiff has failed to do here, "courts are obligated to do it for them, to cut the amount of hours for which payment is sought." <u>Barnes</u>, 168 F.3d at 428.

### (i)    Communications via email

CPA objects to the amount of time Vollrath has billed for email communications. (Dkt. 33 at 8)  As best the Court can decipher from Plaintiff's fee affidavit, Vollrath seeks fees for 266 emails sent or received from Plaintiff or his father, Jacob Munch, for a total of 27.8 hours.[9]  Vollrath also seeks fees for drafting or reading 17 emails sent between him and his paralegal for a total of 1.8 hours.[10]  Finally, Vollrath has billed for 21 emails for 2.3 hours sent to or received from CPA or

---

[9] Said differently, Vollrath alleges that he spent 1668 minutes, or an average of  6.27 minutes, reading or drafting emails.  Based on Vollrath's $350 hourly rate, this would equate to $36.58 for each email sent or received.

[10] These fees are generally compensable as Vollrath was directing his subordinate.  "[T]ime spent in attorney conferences is generally compensable for each participant." <u>Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cnty.</u>, 278 F. Supp. 2d 1301, 1315 (M.D. Fla. 2003).   "Thus, attorneys must spend at least some of their time conferring with colleagues, particularly their subordinates, to ensure that a case is managed in an effective as well as efficient manner."  <u>Id.</u> (citation and quotations omitted).

opposing counsel.  In sum, Plaintiff claims approximately 31.9 hours for reading or drafting emails sent to the various participants in this litigation.  In his reply, Plaintiff reduced this number to approximately thirty hours. (Dkt. 43 at 4)

CPA contends that the amount of fees Vollrath seeks for communicating with individuals is "so excessive that no client could reasonably be expected to pay it." (Dkt. 33 at 8)  Plaintiff responds that this method of billing is inexpensive compared to the alternative of sending letters, stating that "[t]he amount of time billed for each e-mail can hardly be characterized as 'excessive' as most of them were billed at one tenth of an hour.  The time spent is far less then if a letter was to be dictated, proofed, and sent to the client or opposing counsel." (Dkt. 43 at 4)

Plaintiff's explanation is unpersuasive.  The party against whom fees are sought should be responsible only for fees that would be billed to the prevailing party.  Barnes, 168 F.3d at 428. Although a client should be apprised of the status of pending litigation and involved in its resolution, the hours claimed for this activity are excessive.  It is unreasonable for Plaintiff to expect CPA to impose these costs as it would be equally unreasonable for Vollrath to assess these costs to his client. A reasonable number of hours for the email communications between Plaintiff (or his father) and Vollrath is 20 hours, rather than 30 hours, resulting in a deduction of 7.8 hours for the hours claimed.  However, the number of hours claimed for the 1.8 hours for emails to Vollrath's paralegal and 2.3 hours for emails sent to opposing counsel are reasonable.  In total, Plaintiff is entitled to recover attorney's fees for 24.1 hours for email communications.

### (ii)      Interview and telephone conversations with client

Plaintiff seeks 0.7 hours for telephone communications between Vollrath, Plaintiff, and Jacob Munch and 1 hour for Vollrath's interview with William Munch.  These hours are reasonable and

it is recommended that Plaintiff be awarded 1.7 hours for this work.

### (iii) <u>Discovery Motions</u>

In total, Plaintiff seeks 11.2 hours for work related to discovery. (Dkt. 43 at 5-6)  CPA contends that these hours are excessive. (Dkt. 33 at 7) The Court will address these hours line-by-line.

The fee affidavit seeks 1.5 hours for preparation of the witness list and another 0.2 hours to review the witness list.[11]  That is, Vollrath supposedly spent 96 minutes drafting a witness list that includes five individuals (William Munch, Jacob Munch, corporate representative of CPA, corporate representative of Comcast, and Vollrath himself), a notation of "[a]ny witnesses listed by the defendants," and a certificate of service. (Dkt. 15)   The Court finds that the 1.5 hours for preparation of this witness list to be entirely unreasonable and recommends that these fees should be reduced accordingly.  In the reply, Vollrath does not seek the 1.7 hours for preparation and review  of the list. Plaintiff should be awarded 0.2 hours in attorney's fees, instead of the 1.7 hours claimed for this activity.

In his reply, Plaintiff lists one hour for preparation of a certificate interested persons, a corporate disclosure statement, a notice of related cases, and Rule 26 disclosures. (Dkt 43 at 5) However, a review of Plaintiff's fee affidavit warrants a reduction of these hours as Plaintiff also billed for four emails on June 7, 2013 for this block of time. (Dkt. 28 Ex. 1 at 4)  Accordingly, this amount should be reduced to 0.6 hours.

Plaintiff's reply also indicates Vollrath spent 0.5 hours revising the case management report. (Dkt. 43 at 5)  However, Plaintiff's fee affidavit indicates that Vollrath sent four emails to opposing

---

[11] In his reply, Vollrath grouped the 0.2 hours reviewing the witness list with "read and review answer and affirmative defenses" for 0.7 hours. (Dkt. 43 at 5)

counsel and Plaintiff and revised the case management report for this billing entry. (Dkt. 28 Ex. 1 at 5)  Accordingly, this item should be reduced to 0.1 hours to reflect the email communication.

Plaintiff also seeks 0.2 hours reviewing the affidavits of Plaintiff and Jacob Munch, 0.5 hours for reading and reviewing CPA's answer and affirmative defenses, 1.5 hours preparing the first draft of the case management report, and 0.4 hours for reviewing CPA's settlement offer.  This amount of time is not unreasonable, and Plaintiff should receive 2.6 hours in fees for this work.

As for the 6.9 hours[12] claimed for Vollrath's reviewing and preparing discovery.  CPA argues that given Vollrath's experience in the field, this amount is excessive and he should not be awarded more than one hour for this work.  While one hour is insufficient to compensate Vollrath, given the record, the Court agrees that the amount claimed is excessive and recommends reducing this amount to three hours.

Accordingly, it is recommended that Plaintiff recover a total of 6.5 hours of attorney's fees for work related to discovery.

### (iv)    Attorney's Fees-Related Work

Recognizing that time spent preparing a motion for attorney's fees is generally compensable,[13] CPA challenges the time Vollrath spent preparing the fee petition because he "has been so unreasonable in settlement discussions that he should not be rewarded for his conduct."

---

[12] The fee affidavit indicates that on July 28, 2013, Vollrath spent 0.2 hours reviewing request for admissions, 0.2 hours reviewing request for production, 0.2 hours reviewing interrogatories, 2.3 hours preparing the first set of interrogatories, 1.5 hours preparing requests for production, and 1.5 hours preparing requests for admissions, for a total of 5.9 hours.  It is not clear how Vollrath arrived at the total of 6.9 hours for these activities.

[13] Under the FDCPA, a prevailing party is entitled to fees incurred seeking to secure an attorney's fees award.  Zachloul v. Fair Debt Collections & Outsourcing, No. 8:09-CV-128-T-27MAP, 2010 WL 1730789 (M.D. Fla. Mar. 19, 2010) report and recommendation adopted sub nom. 2010 WL 1727459 (M.D. Fla. Apr. 27, 2010).

(Dkt. 33 at 8)   Plaintiff seeks 4.3 hours of attorney fees and 1 hour of paralegal fees for the preparation of the motion.   Although the record indicates some intransigence on Vollrath's part in the settlement discussions, the Court finds that he should be compensated for this activity.

Plaintiff's initial demand against both CPA and Comcast, dated March 28, 2013, was for $2,000.00 in actual damages and $6,000.00 in statutory damages.[14] (Id. at 2-4)   Plaintiff also estimated attorney's fees to be $7,000.00. (Id. at 3)   Defendant CPA's counsel initiated settlement discussions on June 26, 2013. (Dkt. 33 Ex. 1 at 6-7)   Settlement negotiations continued, and on August 16, 2013,[15] Plaintiff submitted an offer seeking $6,000.00 in damages for Plaintiff, $9,450.00 attorney's fees for Vollrath, and $1,531.00 for paralegal fees. (Dkt. 33 Ex. 2 at 8-9)   The parties disagreed on the amount of damages Plaintiff was entitled to, relying on conflicting case law. (Dkt. 33 Ex 3 at 2-3)   On September 5, 2013, Plaintiff and CPA settled for $3,000.00 in damages to Plaintiff. (Dkt. 33 Ex. 4 at 2-4)   However, there was a delay of over two months before the settlement was finalized. (Dkt. 33 Ex. 6)   Accordingly, the Court recommends that the 4.3 hours for drafting the fee petition and the 1 hour of paralegal time to prepare the motion be approved as reasonably incurred.

### (v)      Paralegal Fees

Plaintiff seeks 13.2 hours for paralegal services.   CPA argues that some of the costs are unreasonable.   In reviewing the entries for paralegal time, the Court finds the following to be vague or improperly billed:

---

[14] The demand included a clerical error seeking $8,000.00 in statutory damages. (Dkt. 33 Ex. 1 at 3)

[15] The document is dated August 16, 2012 but reflects events occurring in 2013, so this is construed to be a scrivener's error.

- 2/25/13 - setup file - 0.5 hours[16]

- 6/10/13 - prepare summons for S&W - 0.5 hours[17]

- 6/12/13 - prepare motion in limine - 0.75 hours[18]

(Dkt. 28 Ex. 1 at 9-10)

Accordingly, the Court recommends a reduction in the number of hours for paralegal fees by 1.75 hours to 11.45 hours.[19]

### (f)     Reduction to Reasonable Number of Hours

Either an hour-by-hour analysis of the requested hours or an across-the-board reduction can be used if necessary to reduce the number of hours to those deemed reasonable. Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1351-52 (11th Cir. 2008) (per curiam).  Here, the Court has determined that an hour-by-hour analysis is the appropriate way to evaluate Plaintiff's fee petition and has adjusted the fee petition accordingly.

### 3.     Reasonable Attorney's Fees

After evaluating Plaintiff's fees line by line, it is recommended that Plaintiff is entitled to the following fees:

| Name | Hours | Hourly Rate | Fees |
|------|-------|-------------|------|
| Vollrath | 36.6 | $350.00 | $12,810.00 |

---

[16] This is clerical work that should not be billed to a client

[17] It is not apparent how this entry relates to this case.

[18] This motion was never filed in this case and it is unclear why it would be.

[19] This amount includes the one hour relating to the attorney's fees motion, discussed supra.

| Paralegal | 11.45 | $95.00 | $1,087.75 |
| **Total:** | **48.05** | | **$13,897.75** |

### 4.    Reduction to the Lodestar for Results Obtained

The final step in the attorneys' fees analysis is to determine whether a further reduction is warranted based on the results obtained. See Barnes, 168 F.3d at 427.  The lodestar must be reduced to reflect a plaintiff's partial or limited success. Norman, 836 F.2d at 1302.  If a plaintiff was successful, the court should "compensate for all hours reasonably expended." Id. (citation omitted).  "[T]he relief a plaintiff requested is indeed relevant to determining the extent of that plaintiff's success." Fulford v. NCO Fin. Sys., Inc., No. 6:07-CV-1196-ORL-22KRS, 2008 WL 2952859, at *11 (M.D. Fla. July 30, 2008) (unpublished) (citation and internal quotations omitted).

The FDCPA provides for recovery of actual damages, reasonable attorney's fees and costs, and a maximum of $1,000.00 in statutory damages for each violation. 15 U.S.C. § 1692k(a).  Plaintiff received a settlement of $3,000.00 and reasonable attorneys' fees and costs from CPA. (Dkt. 1)  Considering this, an additional reduction of the lodestar is unnecessary.

## II.    Costs

In addition to requesting attorneys' fees, Plaintiff also seeks reimbursement of $400.00 in costs for filing the complaint.[20]  The FDCPA grants prevailing plaintiffs "the costs of the action." 15 U.S.C. § 1692k(a)(3).  This district limits costs in FDCPA cases to those allowed under 28 U.S.C. § 1920. See Montgomery v. Fla. First Fin. Group, Inc., No. 06-CV-1639-ORL-31KRS, 2008 WL 3540374, at *15 (M.D. Fla. Aug. 12, 2008) (unpublished) (finding the plaintiff's costs limited to

---

[20] Plaintiff initially sought $120.00 for service of process against Comcast and CPA. (Dkt 28 Ex. 1 at 10)  However, CPA noted that it waived service of process and Comcast remains a party. (Dkt 33 at 8)  Accordingly, Plaintiff has withdrawn this expense in his reply. (Dkt. 43 at 7)

those allowed under 28 U.S.C. § 1920).  Plaintiff has satisfied his burden of demonstrating his entitlement to the $400.00 filing fee pursuant to 28 U.S.C. § 1920(1).

<u>Conclusion</u>

As the prevailing party under the FDCPA, Plaintiff should be awarded $13,897.75 in fees and $400.00 in costs for a total of $14,297.75.

Accordingly, and upon consideration, it is **RECOMMENDED** that:

(1)     Plaintiff's Motion for Attorney's Fees and Costs Pursuant to Defendant's Offer of Judgment (Dkt. 13) be **GRANTED IN PART and DENIED IN PART** as set forth above; and

(2)     Plaintiff be awarded $13,897.75 in attorneys' fees; and $400.00 in costs.


**Dated: August 21st, 2014**

ELIZABETH A JENKINS
United States Magistrate Judge


<u>**NOTICE TO PARTIES**</u>

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).


Copies to:
Counsel of Record
District Judge